**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| GOLDEN PASS PIPELINE LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:26-CV-03087 |
| | § | |
| ISC CONSTRUCTORS, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM & ORDER**

Before the Court is Defendant ISC Constructors, LLC ("ISC")'s Motion to Stay Proceedings Pending Appointment and Determination of an AAA Rule R-7 Arbitrator (ECF No. 12). Plaintiff Golden Pass Pipelines LLC ("Golden Pass") has also filed a Motion for a Preliminary Injunction to stay the ongoing arbitration proceedings (ECF No. 4). For the reasons that follow, the Court **GRANTS** ISC's Motion to Stay (ECF No. 12) and **ORDERS** that all proceedings in this case shall be stayed pending the Rule-7 Arbitrator decision's decision on joinder and consolidation.

## I.    BACKGROUND

The relevant facts are largely undisputed. Golden Pass is the owner of a construction project at the heart of the dispute. ECF No. 1 at ¶ 3. Golden Pass contracted with Performance Contractors Inc. ("PCI") to build two pipeline compressor stations ("the Golden Pass Pipeline Project"). *Id*. The Golden Pass Pipeline Project was ultimately completed in June 2025, nine and a half months after the agreed upon date. *Id*. Golden Pass and PCI dispute who is responsible for the delay. *Id*.

The contract between Golden Pass and PCI contained a binding arbitration clause which stated the parties "agree to resolve all differences arising out of or relating to this CONTRACT through binding arbitration before three (3) arbitrators pursuant to the AAA Arbitration Rules." ECF No. 1, Ex. A ("Primary Contract") at 88. ICS is not a party to this agreement.

In connection with the Golden Pass Pipeline Project, PCI hired ISC as a subcontractor to perform electrical and instrumentation work, including installation of electrical cable at the two compressor stations. ECF No. 1 at ¶ 18. PCI and ISC had a standing agreement entered into on September 8, 2010 that governed ISC's subcontracting work on the Golden Pass Pipeline Project. ECF No. 15, Ex. A. ("the Subcontract"). Golden Pass is not a party to this agreement. As relevant here, the Subcontract stated that "[ISC] agrees to make all claims for any additional compensation or damages for which [PCI] is or may be entitled to seek reimbursement from the Owner in the manner provided by the Prime Contract for like claims by [PCI] upon the Owner." *Id*. at § 12.1. The Subcontract further provides that "[PCI] may allow [ISC], by and through [PCI], to institute any action or proceeding to recover damages by reason of any affirmative claim by [ICS], or by reason of any deduction or refusal to pay by the Owner, for any reason, involving the work or performance of [ISC]." *Id*. at § 12.1.2. Additionally, it states that "[i]n the event [PCI] is involved in arbitration or litigation with the Owner involving issues related to [ISC's] work, [ISC] agrees to be joined in any such proceeding, if allowed by the arbitrators or Court." *Id*. at § 12.2. The Owner in this case refers to Golden Pass, and the Prime Contract is the agreement between Golden Pass and PCI.

On March 26, 2026, ISC filed an arbitration demand before the American Arbitration Association ("AAA") against Golden Pass and PCI related to damages it allegedly suffered as a result of the delay in the Golden Pass Pipeline Project. ECF No. 1, Ex. B (ICS demand). ISC

2 / 6

asserted that it is "a party to an arbitration agreement dated 9/8/2010, which provides for arbitration under the Construction Industry Rules of the American Arbitration Association." *Id*. at 1. It did not specify the parties to September 2010 agreement. The same day, PCI filed a similar arbitration demand against Golden Pass. ECF No. 1, Ex. C (PCI demand). PCI's demand stated that "[PCI's] claim includes a pass-through claim from its subcontractor, ISC, and this matter should be joined with AAA matter No. 01-26-0001-4823." *Id*. In the arbitration between PCI and Golden Pass, Golden Pass has asserted counterclaims against PCI, including claims that involve ISC's work on the project. ECF No. 15 at 1-2.

On April 17, 2026, Golden Pass filed an objection to ISC's participation in the pending arbitration between Golden Pass and PCI. ECF No. 15 at 3. This triggered the AAA Rule R-7 mechanism for resolving disputes over consolidation and joinder; and on Monday, April 20, 2026, pursuant to Rule R-7, ISC and PCI (but not Golden Pass) submitted a request to the AAA for expedited appointment of a Rule R-7 Arbitrator. *Id*. On April 22, the AAA stayed the merits arbitrations and pending a decision by the R-7 Arbitrator. *Id*. Parties have informed the Court that the R-7 Arbitrator will hear oral argument on the question of joinder and consolidation on May 20, 2026.

On April 16, 2026, Golden Pass filed suit in this Court against ISC. Golden Pass seeks a declaration stating that ISC has no agreement to arbitrate with Golden Pass, an order staying ISC's participation in the pending arbitration, an order preliminarily and permanently enjoining ISC's participation in the pending arbitration, and a declaration that ISC cannot state a breach of contract claim against Golden Pass in connection with the Golden Pass/PCI Contract. ECF No. 1 at 11. Golden Pass has separately filed a Motion for a Preliminary Injunction seeking an order preliminary enjoining ISC from attempting to arbitrate any dispute with Golden Pass. ECF No. 4.

For its part, ISC has filed a Motion to Stay Proceedings in this Court Pending Appointment and Determination of an AAA Rule R-7 Arbitrator. ECF No. 12. The Motions are fully briefed.

## II.    DISCUSSION

Golden Pass does not dispute the enforceability of the arbitration agreement between itself and PCI, nor—at least explicitly—does it seek to enjoin the pending arbitration proceeding initiated by PCI. Rather, Golden Pass argues that, because there is no arbitration agreement between Golden Pass and ISC, ISC must be enjoined from pursuing its arbitration demand against Golden Pass before the AAA. Additionally, Golden Pass seeks a declaration that ISC cannot state a breach of contract claim against Golden Pass in connection Golden Pass Pipeline Project because it was not a party to the Golden Pass/PCI project.

The parties have engaged in extensive briefing concerning whether ISC's right (or lack thereof) to initiate arbitration against Golden Pass, which the Court has considered. But the Court is of the opinion that regardless of the validity of ISC's initial arbitration demand against Golden Pass, the separate arbitration demand by PCI requires that the Court grant ISC's Motion to Stay and forebear ruling on the Motion for Preliminary Injunction until the R-7 Arbitrator has reached a conclusion regarding joinder.[1] As Golden Pass acknowledges, PCI's arbitration demand

---

[1] Golden Pass contends that ISC must satisfy the four-factor test laid out in *Nken v. Holder*, 556 U.S. 418 (2009) to be entitled to a stay. *See* ECF No. 17 at 9. But as ISC points out, that case dealt with the circumstances under which an appellate court may stay enforcement of an order pending judicial review. While *Nken* is sometimes invoked in other contexts, the Court agrees with ISC that it applies to situations in which a party seeks a stay of enforcement of an existing Court order pending an appeal, rather than a stay of a proceeding pending a parallel arbitration proceeding that may impact the relief sought in the proceeding before this Court. The Court therefore declines to address the *Nken* factors and instead proceeds "incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997).

explicitly stated that its "claim [against Golden Pass] includes a pass-through claim from its subcontractor, ISC" and requested that the matter be joined with ISC's demand against Golden Pass and PCI. Thus, even if this Court were to conclude that ISC had no legal basis upon which to include Golden Pass in its initial arbitration demand, this conclusion would be of no practical consequence if the Arbitrator concluded that PCI could join ISC as a party in its arbitration proceeding against Golden Pass.

Golden Pass agreed "to resolve all differences *arising out of or relating to* [the contract with PCI] through binding arbitration," Primary Contract at 88 (emphasis added). The ISC Subcontract allowed ISC, "by and through [PCI], to institute any action or proceeding to recover damages. . . by reason of any deduction or refusal to pay by [Golden Pass], for any reason, involving the work or performance of [ISC]." Subcontract at § 12.1.2. PCI has properly invoked the arbitration clause in its agreement with Golden Pass and has affirmatively sought to join ISC as a party to the arbitration proceeding and assert claims on behalf of ISC. An arbitrator could therefore reasonably conclude that ISC should be joined in the ongoing arbitration between PCI and Golden Pass—even if ISC had included only PCI and not Golden Pass in its arbitration demand. While Golden Pass' position is "that any harm suffered by PCI's subcontractors is solely the responsibility of PCI," ECF No. 1 at ¶ 22, this is a question for the arbitrators in the pending arbitration between PCI and Golden Pass to decide—not this Court. The Court is therefore unwilling to consider the merits of Golden Pass' requests for declaratory and injunctive relief against ISC before the R-7 Arbitrator has made a determination as to whether ISC can be properly joined as a party to PCI's pending arbitration against Golden Pass. If the Court were to enjoin ISC from participating in arbitration against Golden Pass at this juncture, it would effectively be

interfering with the ongoing and undisputedly valid binding arbitration between PCI and Golden Pass.

## III.   CONCLUSION

The Court therefore **GRANTS** ISC's Motion to Stay (ECF No. 12) and **ORDERS** that all proceedings in this case be stayed pending the Rule-7 Arbitrator's decision on joinder and consolidation. The parties are further **ORDERED** to confer and submit an update to the Court within **TEN DAYS** after the Rule-7 Arbitrator issues a decision.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 15th day of May, 2026.

Keith P. Ellison
United States District Judge

6 / 6